IN RE ESTATE OF JOHN DELANEY.

JANUARY 23, 1929.

*Maurice P. Cahill* and *Clearman & Olson*, for appellant.

*Walter M. Davis*, for appellee.

MORLING, J.—Decedent, John Delaney, had two children, appellant's mother, Ella Delaney Brennan, and appellee, James Delaney. Appellant, Anna Brennan Dalton, was born in 1877. Her mother died the same year. In 1878, John Delaney and his wife, who predeceased him, made a joint will, bequeathing to appellant "the sum of one dollar as my said daughter and family have already received the sum of $500 from us," and to James all real estate and personal property. This will bore a defectively witnessed codicil, requiring James to pay appellant $500 ten years after testator's death.

On April 20, 1926, appellant, Anna Brennan Dalton, sued James Delaney for partition of the John Delaney real estate, alleging that plaintiff and defendant were the sole heirs of John Delaney, deceased, intestate. James Delaney answered, alleging that decedent died testate. On May 3, 1926, James filed petition for probate of the will of 1878. Appellant objected to the probate of the will of 1878, and has appealed from an order sustaining motion attacking her objections. *In re Estate of De-*

*laney*, 207 Iowa 451. There appears in the record now before us a will by John Delaney dated November 17, 1897, giving all of testator's property to James for life, and at his death to his two children, on condition that James pay appellant $400. This will contains no revocation clause, and no reference to the will of 1878, or any other will. On June 30, 1927, appellant began the present proceeding, by filing petition alleging that John Delaney, "on or about the year 1900, executed a will" by which "all prior wills were revoked," and which gave testator's property to appellant and to the two children of James in equal parts. Appellant alleges "that said will has been in some manner become lost and your petitioner has no knowledge or information concerning the present whereabouts thereof," and prays for its establishment and admission to probate. James Delaney denies the execution of the alleged lost will. The trial court found that the evidence did not preponderate in favor of appellant, and dismissed her petition.

Appellant makes the point that, "when the instrument in controversy has been traced into the hands of an adverse party who could benefit by its destruction or suppression, then the requirements as to quantity of proof in such cases are relaxed" (citing *Miller v. Miller*, 203 Iowa 888). Appellant says:

"It is true that we have not been able to trace the will of 1900—the lost will—into the hands of appellee. We have, under pressure of litigation, induced him to produce, first the will of 1878, later, the one of 1897; and we believe that we are warranted in saying that, if he had not helped hunt for the will of 1900, in all probability it would not be a *lost* will."

On this point we need say no more than that there is no evidence in any way tending to show that James Delaney ever had possession or control of any such will as that which appellant claims to have been lost.

Appellant produced as a witness John Rohret, a law graduate and banker; who testified that he could not state exactly when it was, but probably several years after he went into the bank,—which was in the spring of 1895,—he wrote a will for John Delaney. "This will undoubtedly contained a revocation clause in it. In writing wills, I always included a revocation clause," and there was a revocation clause in this will.

"The substance of the will I drew, with reference to testator's property, gave it to his grandchildren. Q. Will you state, as nearly as you can, in what parts it was given to the grandchildren? A. Well, I couldn't be positive of that, but I think it gave it to them share and share alike. That is my best recollection. I don't think there was any property devised or bequeathed to any other person than to the grandchildren. * * * I remember it was pretty cool weather when I wrote this will for John Delaney, but couldn't say as to the time of year. * * * I wrote the will with pen and ink. I don't think there was more than one sheet of ordinary legal-cap paper. * * * The will was signed by him [testator], and then by myself and Patrick Dalton, as witnesses. The will was left with John Delaney. I have never seen it since that time. I don't think that I ever had any discussion with him about it since that time. * * * This one will was the only will I ever drew for him. I am sure about that. * * * ''

Thereupon, the will of 1897, which appears to be witnessed by Rohret and P. Dalton, was shown Rohret, who said that his purported signature was his; that he could not say as to the signature of testator:

"Only it must be, if I witnessed it at that time. Q. As matter of fact, isn't that the will you had reference to, you wrote? A. Why, this is a new one to me; I don't remember this one at all. * * * That is a new one to me; I never saw that before, that I remember. * * * Q. You are very positive that will is all in your handwriting, aren't you? A. Yes, sir. All except the signatures of P. Dalton and John Delaney. * * * I don't pretend to carry in my mind provisions in wills that I drew from 25 to 27 years ago. * * * I was positive of this because of the circumstances that he jumped Jim Delaney and gave it to his grandchildren,—that was the unusual fact. * * * Q. And this will was written within the very period of time you stated you wrote a will for John Delaney, wasn't it? A. Well, along about that time, yes."

There is no other evidence of the actual execution or contents of the alleged lost will.

"To establish a lost will or prove its contents, the evidence

must be of a very clear and satisfactory character." *In re Estate of Thorman,* 162 Iowa 237.

See, also, *McCarn v. Rundall,* 111 Iowa 406; *Miller v. Miller,* 203 Iowa 888. Manifestly, the evidence does not measure up to this requirement.—*Affirmed.*

All the justices concur.